Eric A. FORETICH, Appellant,

v.

CBS, INC., et al., Appellees.

No. 91–CV–840.

District of Columbia Court of Appeals.

Argued Nov. 17, 1992.
Decided Jan. 15, 1993.

50

Elaine Mittleman, Falls Church, VA, for appellant.

Richard S. Hoffman, with whom Nicole K. Seligman and Lynda L. Homerding, Washington, DC, were on the brief for appellees CBS, Inc., Bristol–Myers Squibb Company, CTP, Inc., Bree Walker and Reese Schonfeld.

Timothy Patrick Fox, with whom Stephen H. Sachs and Juanita A. Crowley, Washington, DC, were on the brief for appellee Jean Elizabeth Morgan.[1]

Before ROGERS, Chief Judge, TERRY, Associate Judge and KERN, Senior Judge.

ROGERS, Chief Judge:

This is an appeal from the grant of judgment on the pleadings under Super.Ct.Civ.R. 12(c) and the denial of a motion to alter and amend the judgment. Appellant contends that the trial judge erred in (1) dismissing the complaint for defamation and intentional infliction of emotional distress pursuant to Rule 12 when the judge considered material outside of the pleadings, (2) not viewing the television program videotape before ruling on the meaning of the alleged defamatory statements, (3) finding that fifteen statements could not be defamatory as a matter of law, and (4) not viewing a second videotape that was discovered shortly after judgment was granted to appellees. Finding these contentions unpersuasive, we affirm.

I

This appeal relates to the custody visitation dispute between appellant Eric Foretich and his ex-wife, appellee Jean Elizabeth Morgan, who has alleged that appellant sexually abused their daughter Hilary and his daughter Heather by his former wife appellee Sharon Sullivan.[2] Appellant sued appellees C.B.S. Inc., Bristol–Myers Company, CTP, Inc., Reese Schonfeld, Bree Walker, Morgan and Sullivan seeking compensatory and punitive damages for defamation, invasion of privacy, false light, and intentional infliction of emotional distress, as a result of a television program, "People Magazine on TV," which aired nationally and was seen in Washington, D.C., on August 16, 1989.[3] He alleged that appellees had "cooperated in airing" this television program concerning his alleged sexual abuse of his daughters, and, as a result of the false and defamatory statements in it, he had suffered personal and professional injuries. Pursuant to the trial court's order of July 27, 1990, directing appellant to identify, by full quotation, every statement in the television program which he alleged was false and defamatory, appellant filed a supplement to the complaint listing fifteen statements.[4] The parties stipulated that appellant and appellee Morgan and Sharon Sullivan were public figures for the purpose of this litigation, *see New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964), and that the legal standards applicable to appellant's action against the media appellees are also applicable to his action against appellees Morgan and Sullivan.

Appellee Morgan filed a motion pursuant to Super.Ct.Civ.R. 12(b)(6) to dismiss the

---

**1.** Appellee Sharon Sullivan filed a motion on August 14, 1992, to withdraw immediately from the appeal. The court deferred ruling on the motion until after oral argument. Appellee Sullivan did not file a brief but instead filed a statement on March 17, 1992, indicating her agreement with the brief filed by the media appellees. On October 7, 1992, appellant filed a statement indicating that he did not oppose appellee Sullivan's withdrawal from this litigation with prejudice. Accordingly, the court grants appellee Sullivan's motion to withdraw.

**2.** *Morgan v. Foretich,* 846 F.2d 941 (4th Cir. 1988); *Commonwealth v. Sharon Foretich,* No. J2089 (Circuit Court of Fairfax County, Va.

1987); *Morgan v. Foretich,* 564 A.2d 1 (D.C. 1989); *Morgan v. Foretich,* 546 A.2d 407 (D.C. 1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 790, 102 L.Ed.2d 781 (1989); *Morgan v. Foretich,* 528 A.2d 425 (D.C.1987); *Morgan v. Foretich,* 521 A.2d 248 (D.C.1987).

**3.** Appellant's claims for invasion of privacy and false light were dismissed by order of July 27, 1990, on the ground that these causes of action are not recognized under Virginia law, and are not at issue on appeal. That order also denied the motion to strike appellant's statement of assertions in dispute.

**4.** *See* note 22, *infra.*

complaint as failing to state a claim upon which relief can be granted because the two statements uttered by her were not defamatory as a matter of law and, regarding appellant's claim for intentional infliction of emotional distress, appellee Morgan's "utterance of those statements, *supra* note 22, was not outrageous as a matter of law." The media appellees moved for judgment on the pleadings pursuant to Super.Ct.Civ.R. 12(c) on the grounds that the statements "are not 'of and concerning' him, ... [and] do not injure him beyond the harm caused by the unchallenged portion of the program."[5] Attached to the motion was a transcript of the television program prepared by one of the employees of the media appellees.[6] Appellant filed oppositions to both motions, arguing that appellee Morgan misapplied the incremental harm doctrine, that the trial judge would have to examine the entire content of the television program and that Morgan's statements were outrageous and sufficient to show intentional infliction of emotional harm. In addition, appellant argued that by attaching the transcript and relying on information outside of the pleadings, the media appellees had converted their motion under Rule 12(c) to a motion for summary judgment under Super.Ct.Civ.R. 56, but had failed to set out a statement of material facts as to which there is no genuine dispute. Appellant asserted that there were material disputed facts and, therefore, the media appellees' motion for judgment should be denied.

One month later, on November 2, 1990, appellant filed, in response to the trial court order of October 15, 1990, a Memorandum on Meaning of Statements. In his memorandum, appellant stated that he "does not plan in this action to prove the falsity of the allegation that he sexually abused his two daughters." He "submit[ted] that he has never abused his daughters, sexually or in any other fashion," and explained that "[h]is decision to limit the litigation is ... in no sense an admission that the accusations of sexual abuse are true." He further stated that he thought appellees acted with malice and that the television broadcast was presented without "any reliance on his version of the facts, and in a sensationalist style that contributed to the ratings." He further claimed that:

> the style and presentation of the broadcast, as well as the acts of the participants, including their facial expressions, intonation, and the placing of Sharon Sullivan in a shadow, contribute to the false and defamatory nature of the statements. These impressions cannot be understood or conveyed simply by reading the statements.

Appellant then reviewed why he claimed that the fifteen statements are false and defamatory. Appellee Morgan filed a response that the two statements uttered by her could not form the basis of a libel action since appellant had elected not to litigate the child abuse issue and the statements were not "of and concerning" him.

The trial judge granted appellees' motions for judgment on the pleadings,[7] treat-

---

5. Super.Ct.Civ.R. 12(c) provides:

 *Motion for judgment on the pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move the judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. [Emphasis added.]

6. The transcript was attached to an affidavit by an attorney at the law firm representing the media appellees that states:

 > the transcript ... is a fair and accurate representation of all statements made on the segment of the "People Magazine on TV" episode at issue in this action. The transcript contains all statements on the "People Magazine on TV" episode that refer or relate to the story about the controversy between [appellant] and his former wives. * * * The transcript ... presents the broadcast as it sounded to the viewer, after the deletions and dubs were made.

7. Although Sharon Sullivan did not file or join a motion to dismiss, the trial judge *sua sponte* dismissed the complaint as to her as well on the basis that the facts were undisputed and those facts established an "unequivocal right to judgment," citing *McBryde v. Amoco Oil Co.,* 404

ing appellee Morgan's motion to dismiss as a motion for judgment on the pleadings in view of appellant's supplement to his complaint.[8] Applying Virginia law, because appellant lived in Virginia at the time of the broadcast,[9] the trial judge found, in light of appellant's refusal to litigate the underlying allegedly defamatory statements of his sexual abuse, that the fifteen statements were not defamatory and did not constitute intentional infliction of emotional distress. The trial judge concluded:

> If the statements listed in the supplement to the complaint can only be considered defamatory in conjunction with the assertion that [appellant] sexually abused one or both of his daughters, then well-settled law regarding public figures, stipulations entered in this case, and [appellant's] statement that he will not prove the falsity of the allegation that he sexually abused his two daughters, would require the Court to conclude, as a matter of law, that these statements are not capable of carrying a defamatory meaning.

Appellant's motion to alter or amend the judgment under Super.Ct.Civ.R. 59(e)—on the grounds that the trial judge erred by not viewing the television program videotape, treating appellees' motions as motions under Rule 56, and viewing a videotape of a program aired on November 28, 1988, and by applying Virginia law where

defamation arises from the words and the inducement, citing *Wilder v. Johnson Pub. Co.,* 551 F.Supp. 622, 625 (E.D.Va.1982)— was denied.

**II**

■ Appellant contends that the trial judge erred in dismissing the complaint under Rule 12(c) because the judge considered material that was outside of the pleadings, an affidavit of J. Leib Dodell and a ten page transcript of the television program.[10] The affidavit is that of an attorney at the law firm representing appellee CBS, Inc., and states that he had viewed the videotape segment of "People Magazine on TV" and that "the transcript attached ... is a fair and accurate representation of all statements made on the segment of the 'People Magazine on TV' episode at issue in this action." The affidavit also refers to certain deletions of names during the program and states that the transcript "presents the broadcast as it sounded to the viewer, after the deletions and dubs were made." Appellant maintains that the judge should have required full briefing, including a statement of facts at issue, before he made any determination which relied on an affidavit. Appellant claims that he was not afforded an opportunity to file a statement of facts at issue, and that media appellees filed no statement of material facts as to

A.2d 200, 203 (D.C.1979) (quoting *Dormu v. Gill,* 277 A.2d 104 (D.C.1971)); *see also* J. MOORE, J. LUCAS & G. GROTHEER, JR., MOORE'S FEDERAL PRACTICE ¶ 12.15, at 12–105 (2d ed. 1989).

**8.** The trial judge noted that "[appellee] Morgan considered the supplement to the complaint to be an amendment to the complaint, while the media [appellees] did not," but concluded that, as the media appellees argued, the trial judge's analysis is the same, citing J. MOORE, J. LUCAS & G. GROTHEER, JR., MOORE'S FEDERAL PRACTICE ¶ 12.15, at 12–104–113 (2d ed. 1989).

**9.** The trial judge relied on *Liberty Lobby, Inc. v. Dow Jones & Co.,* 267 U.S.App.D.C. 337, 343 n. 3, 838 F.2d 1287, 1293 n. 3, *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) (substantive law to be applied in defamation action is place where plaintiff suffered most significant harm to reputation); *Foretich v. Glamour,* 741 F.Supp. 247, 250 n. 3 (D.D.C.1990) (applying Virginia law); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(2) (1971).

**10.** Rule 12(c) motions are generally treated as Rule 56 motions where matter outside of the pleadings is presented and not excluded by the trial court, and our review of the grant of summary judgment is de novo. *Knight v. Furlow,* 553 A.2d 1232, 1233 (D.C.1989); *Hill v. District of Columbia,* 345 A.2d 867, 868–69 (D.C.1975) (Rule 12(c) motion converted to summary judgment); *see Wemhoff v. Investors Management Corp.,* 455 A.2d 897, 898–99 (D.C.1983) (12(b)(6) motion converted into summary judgment); 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1371, at 544 (2d ed. 1990). Our review of the grant of a Rule 12(b)(6) motion is also *de novo. Johnson-el v. District of Columbia,* 579 A.2d 163, 166 (D.C.1990). Rule 12(c) is substantially similar to 12(b)(6), and is treated the same for purposes of conversion to summary judgment. *See generally* WRIGHT & MILLER, *supra,* § 1369, at 532–33.

which there is no genuine issue, and he seeks a remand for a full and proper briefing under Rule 56.

Under Rule 12(b)(6), if "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The same language appears in Rule 12(c). *See* note 5, *supra.* The court has applied a harmless error rule where the trial court's decision to dismiss under Rule 12 can be justified without reference to the material outside of the pleadings. *Healey v. Barker Foundation,* 469 A.2d 1244, 1246 (D.C. 1983). The court has also treated a Rule 12(b)(6) motion as a motion for summary judgment under Rule 56 where the motion referred to an affidavit and certain documents. *Wemhoff v. Investors Management Corp., supra* note 10, 455 A.2d at 898–99; *Launay v. Launay, Inc.,* 497 A.2d 443, 447 (D.C.1985).

The media appellees maintain that the trial judge correctly granted judgment under Rule 12(c) because courts have recognized that when a document is central to the plaintiff's complaint and the plaintiff fails to introduce it, the defendant may introduce the exhibit as a part of his motion attacking the pleading without converting a Rule 12 motion into a motion under Rule 56. *See Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 (1st Cir.1991) (attaching offering materials for a company in a security action); *Miller v. New Am. High Income Fund,* 755 F.Supp. 1099, 1103 n. 6 (D.Mass.1991) (prospectus central to plaintiff's claim); *In re First Chicago Corp. Sec. Litig.,* 769 F.Supp. 1444, 1450 (N.D.Ill.1991) (press releases and annual reports quoted in complaint were pertinent documents that did not convert the Rule 12 motion into a Rule 56 motion). Thus, in *Fudge v. Penthouse Int'l., Ltd.,* 840 F.2d 1012 (1st Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988), the court found no error by the trial court in considering a copy of the article that was the basis for the plaintiff's defamation claim in ruling on the defendant's motion to dismiss the complaint under Rule 12(b)(6). Acknowledging that " 'there is no requirement that the pleader attach a copy of the writing on which his action or defense is based[,] ... when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." *Fudge, supra,* 840 F.2d at 1015. The media appellees point out that appellant has not cited a case involving a defamation action in which the introduction of the publication or transcript of the broadcast at issue converted a Rule 12 motion into a Rule 56 motion.

Here, as in *Fudge, supra,* the basis for the complaint was identified by reference to specific material which was not attached to the complaint, and hence appellant would have had to introduce that material relating to the television program at trial. In *Fudge, supra,* however, there was no dispute about the authenticity of the magazine article which the defendant attached to his motion to dismiss the complaint. By contrast, appellant maintains that the written transcript was not part of the complaint and that at trial he would not have introduced a transcript of the television program but, instead, he would have introduced the videotape. Further, he has never agreed that the transcript was an authentic representation of or substitute for the program. On this basis, appellant distinguishes the cases relied on by appellees where financial reports and other documents have been part of a Rule 12 motion.

We hold that the trial judge erred by not treating appellees' motions under Rule 56. *Hill v. District of Columbia, supra* note 10, 345 A.2d at 868 ("Since trial court considered that evidence in addition to the pleadings, it properly treated the motion ... as provided in Superior Court Civil Rule 56."). The language of Rule 12 is mandatory. *See* note 5, *supra.* The cases relied on by appellees for an exception to the Rule are distinguishable. The transcript attached to media appellees' motion was not the specific material relied on in

appellant's complaint; nor did appellant ever concede that the transcript was a satisfactory substitute. Indeed, the trial judge acknowledged that the written transcript was not the same as the videotape of the television broadcast. Moreover, the trial judge did not view the videotape to which the complaint referred. Hence, *Fudge, supra,* 840 F.2d 1012, and like decisions are inapposite. Therefore, the first question is whether the trial judge's dismissal of the complaint under Rule 12(c) was harmless error, notwithstanding the media appellees' attachment of the transcript to their motion, because "the decision to dismiss can be justified without reference to the [transcript]." *Healey v. Barker Foundation, supra,* 469 A.2d at 1246; *see Miller v. Glanz,* 948 F.2d 1562, 1566 (10th Cir.1991).

The trial judge explicitly relied on the television program transcript in two portions of his memorandum opinion. The judge used the transcript to show that appellant had not listed as defamatory statements in his supplement to the complaint certain more damaging statements that were included in his complaint, and to put in context the statement "[n]ew revelations in the case of Dr. Elizabeth Morgan." The first use of the transcript is a quote of statements by appellees Morgan and Sullivan during the broadcast that accuse appellant of sexually abusing his daughters.

There are seven quotes, the last three [11] of which were paraphrased by appellant in his original complaint.[12] The trial judge, therefore, had notice of these phrases from the complaint itself. The other four quotes center around the allegation that appellant had raped both of his daughters.[13] The judge had ample, although not complete, notice of these allegations from the complaint and appellant's memorandum on the meaning of the fifteen alleged defamatory statements.[14] The reference to the sister's witnessing and the "jail is heaven" remark appear only in the transcript. Consequently, the trial judge used the transcript for more than establishing the fact that appellant chose not to litigate the underlying charge of sexual abuse of his daughters.

The second time the judge explicitly used the transcript, however, he provided an alternative ground on which to base his finding that the phrases were not defamatory. The judge relied on the transcript to refute appellant's argument that the "new revelations in the case of Dr. Elizabeth Morgan" statement "implies that the allegations are of a recent event or recently discovered." The judge, acknowledging that he had to consider not only the words but also the statement "in the entire context in which the statement occurs," quoting *Tavoulareas v. Piro,* 260 U.S.App.D.C. 39, 56, 817 F.2d 762, 779 (1987), then proceeded to

**11.** The trial judge quoted from the transcript that:

> I did not want to expose her publicly as an abused child, and as having an incestual [sic] father.... Um, I think he's a very sick man. And I don't think I'll ever feel totally safe or even safe for my daughter until he goes to jail for what he has done, or until he goes into a mental institution. I think he belongs in either of those two places.... And the only person lying is Eric.

**12.** In his complaint appellant alleged that:

> h. Mrs. Foretich stated that she did not want her daughter exposed publicly as an abused child and as having an incestual father....
> j. Mrs. Foretich said that she thinks Dr. Foretich is a very sick man, and that she won't feel totally safe for her daughter until Dr. Foretich goes to jail for what he's done or until he goes into a mental institution. She stated she thinks Dr. Foretich belongs in either of those two places.

> k.... She said the only person lying is Eric and the only reason he's lying is because he wants to protect himself.

**13.** The trial judge further quoted from the transcript:

> Hilary told me about being sexually assaulted by her father.... And the older sister confirmed not only seeing Hilary being raped, but confirmed herself being raped by Eric.... [J]ail is heaven compared to having your child raped.... I cannot be happy with Hilary being raped.

**14.** In his complaint, appellant alleged that "Dr. Morgan and Sharon Foretich have both accused Dr. Foretich of sexually abusing their daughters.... The women have extensively litigated their allegations against Dr. Foretich, but have not prevailed." In his Memorandum of Meaning of Statements, appellant stated that "Dr. Foretich does not plan in this action to prove the falsity of the allegation that he sexually abused his two daughters."

"assum[e] that viewers would have fairly considered this statement to imply that the allegations are of a recent event, what would the recent event be if not the alleged child sex abuse, which allegation [appellant] has chosen not to prove false?" Based on the assumption that appellant's interpretation of the statement was correct, the judge found that the statement still would not have been defamatory.

In addition, the judge acknowledged that he relied on the transcript for the "guts" of the television broadcast.[15] Although it appears that the judge meant that he only relied in order to obtain a general idea of the subject of the broadcast, the transcript was not the material on which the complaint relied. Moreover, the judge, having never viewed the videotape, was not in a position to determine for himself whether or not the transcript accurately reflected the broadcast; the only evidence on that issue was an affidavit of an attorney for appellee CBS, Inc. Even assuming that appellant's counsel's responses during the colloquy with the trial judge suggest a concession that the transcript was sufficiently accurate to enable the judge to understand the "guts" of the broadcast, *see* note 15, *supra*, it is clear that the judge considered material outside of the pleadings in granting appellees' motions to dismiss.

By considering material outside of the pleadings in granting the motions to dismiss, the trial judge was obligated to assure that appellant had an appropriate opportunity to respond. *See* Rule 56 and Super.Ct.Civ.R. 12–I(k).[16] Although we find no indication in the record that the trial judge informed appellant that appellees' motions had been converted into Rule 56 motions, the record makes clear that the judge afforded appellant a full opportunity, prior to a hearing on the motions, to amass evidence to show the existence of material disputed facts and to demonstrate that appellees were not entitled to judgment as a matter of law. *See Miller v. Glanz, supra,* 948 F.2d at 1565; *Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 472 (D.C.1983) (this court looks to federal construction of identical rules as persuasive authority); WRIGHT & MILLER, *supra* note 10, § 1371, at 544. First, appellant identified every statement which he alleged to be false and defamatory. Second, appellant filed a Memorandum on Meaning of Statements.[17] Third, appellant filed oppositions to the motions to dismiss pointing out, *inter alia,* the absence of a statement of material issues not in dispute, thereby responding, in effect, to a Rule 56 motion and clearly indicating that appellant was aware of the requirements of Rule 56 and Rule 12–I(k). Appellant has not suggested that he was prevented from bringing any argument or alleged fact to the attention of the trial judge, or that he was in any way prejudiced by the failure of the judge expressly to advise that appellees' motions would be converted to a Rule 56 motion. Hence, only appellees could possibly claim any prejudice, and they need not, since, for the reasons that follow, they are entitled to judgment as a matter of law. Accordingly, we turn to appellant's other contentions of trial judge error.

---

**15.** A colloquy between the trial judge and counsel for appellant indicates the nature of the judge's use of the transcript:

> The Court: I'm not basing anything here—
> [Plaintiff's counsel]: Right, I understand that.
> The Court:—on the transcript being a hundred percent letter perfect. Number one, it's usually difficult to take some time to prepare a completely accurate transcript.
> [Plaintiff's counsel]: I would just like to make the point that—
> The Court: Second of all, I agree with you that you need to look at it. It's a visible media. A great deal can be said with arched eyebrows and various other things, but I haven't seen the broadcast. But it is clear—it's

> clear enough from the transcript of what the guts of this story was—
> [Plaintiff's counsel]: Right.
> The Court: which is conspicuously absent from the supplement.

**16.** *See* WRIGHT & MILLER, *supra,* note 10 at 535–56 (discussing the advantages to the moving party of proceeding under Rule 56 rather than Rule 12(c)).

**17.** Although it is not part of the record on appeal, the docket indicates that appellant also filed a statement of material issues in dispute. *See* note 4, *supra.*

## III

Appellant contends that because any determination of the meaning of the statements made during the television broadcast "absolutely requires a viewing of the videotape at issue," the trial judge's failure to view the videotape was reversible error. Appellant argues effectively the importance of viewing a visual medium like a television program.

"Television touches more senses than does the print media, and the standards for finding defamation cannot be woodenly applied without taking into account the kind of medium by which the message was delivered." *White v. Fraternal Order of Police,* 285 U.S.App.D.C. 273, 287, 909 F.2d 512, 526 (1990). In looking at an alleged defamatory statement in a television program, or in a video format, the court must consider the program " 'as a whole' and in the sense in which it would be understood by the average viewer." *Southern Air Transport v. American Broadcasting Companies, Inc.,* 278 U.S.App.D.C. 222, 227, 877 F.2d 1010, 1015 (1989) (quoting *Afro–American Publishing Co. v. Jaffe,* 125 U.S.App.D.C. 70, 76, 366 F.2d 649, 655 (1966) (action for libel and invasion of privacy based on newspaper article and photograph)). Thus, the United States Court of Appeals for the District of Columbia Circuit stated that because, at the time, an inference that Southern Air was engaged in dealings with the South African government "clearly would have a defamatory meaning because of the intense antipathy felt by a great number of Americans towards South Africa," the court was required to consider the news report as a whole. "We must also take into account the impact of the visual effects as well as the text because 'the television medium offers the publisher the opportunity, through visual presentation, to emphasize certain segments in ways that cannot be ascertained from a mere reading of the transcript.' " *Southern Air Transport v. American Broadcasting Companies, Inc., supra,* 278 U.S.App.D.C. at 227, 877 F.2d at 1015 (quoting *Lasky v. American Broadcasting Inc.,* 631 F.Supp. 962, 970 (S.D.N.Y.1986)). This is because "[o]nly by considering the text in conjunction with the accompanying visual images can one understand the possible emotive impact of the story, as it is the juxtaposition of the audio and visual elements that conveys the meaning intended." *Id.,* 877 F.2d at 1015 (citing *Lasky v. American Broadcasting Companies, Inc., supra,* 631 F.Supp. at 970 ("it is the entirety of the program, both audio and video, that must be considered. . . .")).

▬ Obviously, a trial judge could miss subtle, or not so subtle, graphics, visuals or vocal expressions in the absence of actually viewing a television broadcast. In a defamation action based on a television broadcast, only highly unusual circumstances could explain a failure to view the television broadcast before ruling on a dispositive motion. This is such a case.

▬ In his complaint and in identifying the fifteen allegedly defamatory statements, appellant refers expressly to "the content, form and style of the show, including the methods and actions used by Ms. Walker in conducting interviews with Dr. Morgan and Ms. Foretich" and to the tone or demeanor of the speaker a number of times in alleging that he was defamed. But, in this particular case, this was not enough to make clear why viewing the videotape of the broadcast was relevant to showing that appellees were not entitled to judgment as a matter of law. Appellant never indicated how the intonation or shading of Sharon Sullivan's appearance or behavior of the participants or style of presentation of the program would indicate, upon viewing the videotape, that the fifteen statements were capable of a defamatory meaning separate and apart from the claim that appellant had sexually abused his daughters. He has never claimed that there was a voice-over or data shown as background to other scenes during the broadcast that would indicate the statements were independently defamatory. Indeed, he has never even explained how the statements are capable of being defamatory if the underlying allegation of child sexual abuse of his daughters is not false, and appellant has elected not to prove that he

did not abuse his daughters. In those instances where appellant claimed that the defamatory meaning was clear as a result of intonation, which would be apparent from a viewing but not a written transcript of the broadcast, appellant failed at any point to identify the independent defamatory inference that he alleged arose from the fifteen statements, much less what inference would arise from viewing the videotape that would not be clear from reading a transcript. The trial judge afforded appellant a full opportunity to identify the independent defamatory inference on which he was relying. Even on appeal, appellant has not suggested any such inference, arguing only that the trial judge was required to view the videotape. Nor has appellant identified errors in the written transcript.

Such a response, barren of any explanation of the nature of appellant's defamatory claim or theory in the absence of disproof of child sexual abuse, is insufficient. Under these highly unusual circumstances, involving public figures subject to the standard of *New York Times Co. v. Sullivan, supra,* 376 U.S. at 279, 84 S.Ct. at 725, we hold, in light of the analysis in Part IV, *infra,* that the judge's failure to view the videotape of the television program was harmless.

## IV

Appellant contends that the trial judge erred in finding that the fifteen statements, which he identified as false and defamatory, were not defamatory as a matter of law. He maintains that the judge failed to consider whether the statements were capable of a defamatory meaning, and, instead, used a hybrid analysis of whether there was a defamatory meaning independent of an allegation of sexual abuse. He further maintains that the trial judge erred in undertaking the factual and comparative evaluation of the relationship between possible meanings of the statements and the rest of the television program because it was for the jury to decide among a choice of defamatory meanings. Finally, appellant contends that the judge erred by looking to the broadest and most inclusive interpretation of defamation rather than the narrow interpretation followed under Virginia law.

■ A public figure may recover damages for defamation by showing that an allegedly defamatory statement about the plaintiff was made with " 'actual malice,'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan, supra,* 376 U.S. at 297, 84 S.Ct. at 735. *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (plaintiff must show defendant "in fact entertained serious doubts as to the truth of his publication"); *Moss v. Stockard,* 580 A.2d 1011, 1022 & n. 22 (D.C.1990) (plaintiff must plead and prove statements were false and defamatory and "published with some degree of fault") (citing *Harrison v. Washington Post,* 391 A.2d 781, 783 (D.C.1978) (other citations omitted)). Likewise, a public figure may recover for intentional infliction of emotional distress by showing that there was "a false statement of fact," which was made with such "actual malice." *Hustler Magazine v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988). "Actual malice" must be proved by clear and convincing evidence in both causes of action. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974).

■ Under Virginia law, a statement is defamatory if it tends "to injure reputation, 'diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him.' " *General Products Co. v. Meredith Corp.,* 526 F.Supp. 546, 549 (E.D.Va.1981) (quoting Prosser, Law of Torts § 111 (4th ed. 1971)); *see Wilder v. Johnson Pub. Co., supra,* 551 F.Supp. at 624. The trial judge must determine at the outset that, as a matter of law, a phrase is capable of a defamatory meaning before sending the case to a jury. *White v. Fraternal Order of Police, supra,* 285 U.S.App.D.C. at 279, 909 F.2d at 518; *Tavoulareas v. Piro, supra,* 260 U.S.App.D.C. at 56, 817 F.2d at 779;

*Chaves v. Johnson*, 230 Va. 112, 119–21, 335 S.E.2d 97, 102 (1985); *Moss v. Stockard, supra,* 580 A.2d at 1023;[18] *Foretich v. Glamour*, 753 F.Supp. 955, 966 (D.D.C. 1990). The defamatory statement must also be "of and concerning plaintiff." *Gazette, Inc. v. Harris*, 229 Va. 1, 28, 325 S.E.2d 713, 738, *cert. denied.*, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985); *General Products Co. v. Meredith Corp., supra,* 526 F.Supp. at 550. However, it is clear that a plaintiff may not "combine the damaging nature of certain true statements with the falsity of other, immaterial statements in order to provide the basis for a defamation claim." *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir.1990). "('It is not necessary [for a defendant] to establish the literal truth of the precise statements made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.')" *See Liberty Lobby, Inc. v. Dow Jones & Co., supra* note 9, 267 U.S.App.D.C. at 346, 838 F.2d at 1296 (quoting RESTATEMENT (SECOND) OF TORTS § 581A cmt. f (1977)).

 These are the legal standards which the trial judge applied, and we find no error in his application of them. The judge examined whether any of the fifteen statements "are capable of carrying a defamatory meaning independent of the core assertion that [appellant] decided not to prove false, namely the defamatory statement that he sexually abused his two daughters," and found that none were.[19] Appellant's contention, that the trial judge erred because he should have established whether the statements were capable of carrying any defamatory meaning, citing *Tavoulareas v. Piro, supra,* 260 U.S.App. D.C. at 59 n. 23, 817 F.2d at 782 n. 23, is apparently a reference to a meaning independent of the child sex abuse allegation. But appellant never provided a description of the independent defamatory inference on which he was relying in the absence of proof that the allegations of child sexual abuse were false.[20] To the extent that appellant contends the judge erred because the statements were defamatory, in that they created the impression by innuendo that he was a child abuser, the trial judge properly looked to whether or not the words were reasonably susceptible of that meaning where appellant elected not to prove that he had not abused his children. Hence, we find no error by the trial judge in undertaking the evaluation that he did.[21]

 Upon examining the judge's findings on the fifteen statements with regard to a defamatory meaning independent of the allegation of child sexual abuse, we find no clear error, nor do we find that the judge erred in concluding that the statements were "not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory

---

**18.** Appellant cites *Moss v. Stockard, supra,* for the proposition that choosing among defamatory meanings should be done by a jury. The decision clearly states, however, that the judge must first determine if the statement is capable of a defamatory meaning and only if it is, submit the case to the jury to decide between defamatory meanings. 580 A.2d at 1023.

**19.** Appellant's reliance on *Wilder v. Johnson Pub. Co., supra,* 551 F.Supp. 622, is misplaced. While the opinion states that a finding of defamation cannot be overly broad, it also states that the defamatory meaning arises from the words and the inducement (known extrinsic facts). *Id.* at 625. The trial judge, in the instant case, examined the words quoted by appellant and known extrinsic facts in order to find defamation. His findings were, therefore, not too broad.

**20.** Appellant's suggestion at oral argument that he had no such burden is not well founded. *See, e.g., Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 342, 94 S.Ct. at 3008; *Harrison v. Washington Post, supra,* 391 A.2d at 783.

**21.** Appellant's reliance on *Masson v. New Yorker Magazine, Inc.,* —— U.S. ——, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991), is misplaced. That case involved an article in which the author had attributed remarks to the plaintiff knowing that he had not made them. Nothing in that decision is inconsistent with the legal principles applied by the trial judge in the instant case. For example, the Court stated in *Masson, supra,* that a plaintiff, who is a public figure, must show that the defendant "in fact entertained serious doubts as to the truth of his publication." *Id.,* —— U.S. at ——, 111 S.Ct. at 2429. Appellant has made no such showing here.

**22.** We summarize the trial judge's findings and appellant's argument of defamatory meaning. On occasion, where appropriate, we have supplemented the judge's analysis.

Statement No. 1: "a surprise witness in the case".

The trial judge found that this statement was incapable of being defamatory without knowing what the witness would testify and, even if one did know that, it would only be defamatory if the witness supported the assertion that appellant had sexually abused his daughters. Appellant argued that the statement is defamatory because "it tends to bolster the case of Dr. Morgan." But the only way it could bolster appellee Morgan's case is to support the allegations that appellant had sexually abused his daughters, which he has declined to disprove. The statement does not tend to injure appellant's reputation or harm him in any way aside from the charge of child sexual abuse.

Statement No. 2: "New revelations in the case of Dr. Elizabeth Morgan."

The trial judge found that this statement was not defamatory because the revelations were about the child sexual abuse, which appellant was unwilling to disprove. Appellant argued that the reference to revelations was defamatory because it implies that the revelations were newly discovered. The trial judge found that this was disproved by the transcript of the broadcast. Further, the judge found that the claims of appellee Morgan are about child sexual abuse, and to be defamatory any new revelations must be about child sexual abuse.

Statement No. 3: "But they speak with very different voices, and very different results."

The trial judge found no defamatory meaning "apart from [the] central contention of the broadcast." Appellant argued that this statement is defamatory because it implies that the different results in the cases of appellee Morgan and Sharon Sullivan were unfair. This is an example where hearing the tone of voice of the speaker might offer a better indication of what was implied. However, assuming that appellant has correctly identified what was implied, the statement only implies that the results were unfair if appellant sexually abused his daughter and it is, therefore, dangerous for her to be ordered to visit him.

Statement No. 4: "Bear in mind that no criminal charges have been filed against him in connection with these allegations, and he has repeatedly denied all charges."

The trial judge found that this could not be defamatory because it is true. He also properly ruled that not telling appellant's side of the story is not defamatory because the press is under no actionable duty to tell both sides of a story, citing *White v. Fraternal Order of Police, supra,* 285 U.S.App.D.C. at 286, 909 F.2d at 525; *Liberty Lobby, Inc. v. Dow Jones & Co., supra* note 9, 267 U.S.App.D.C. at 346, 838 F.2d at 1296; *Liberty Lobby, Inc. v. Anderson,* 241 U.S.App.D.C. 246, 255, 746 F.2d 1563, 1572

(1984) (Scalia, J.). Appellant argued that the statement was false because it omits the fact that the allegations had been extensively litigated and investigated, "and it was defamatory because it failed to provide any support for appellant's denials or explain that he had prevailed in court."

In his complaint, appellant alleged that the harsh tone of the interviewer added to the defamation resulting from the statement that appellant "vehemently denies all charges and asserts he has been cleared in both court cases. ( [The interviewer] omitted stating that the mothers had not prevailed.)" Assuming the harshest possible tone on the part of the announcer, the statement remains true, and, therefore, it cannot be defamatory.

Statement No. 5: "It was Hilary's testimony . . . "

The trial judge found that the only way this statement could be defamatory would be to assume that Hilary testified about appellant's sexual abuse, and, thus, appellant would have to prove that the sexual abuse was false in order to prove that this phrase was defamatory. Appellant argued that this statement is defamatory because it is false, since Hilary never testified, and a viewer could infer that Hilary gave testimony that supported the child abuse allegations. The trial judge noted, as the media appellees had pointed out, that the statement "gives no hint whether Hilary's testimony would be favorable or unfavorable to [appellant]."

Statement No. 6: "And Social Services undertook to protect the older sister, but not Hilary."

The trial judge found that the only way that this statement could be defamatory is if the daughters were being protected from sexual abuse by appellant, which appellant has chosen not to put at issue. This fully meets appellant's argument that the statement was "defamatory in that it implies that the older sister was protected from Dr. Foretich and that Hilary should have been protected from Dr. Foretich."

Statement No. 7: "So here we have a situation where the circumstances were similar, but the results couldn't be more different. I mean— [word deleted] gets to live with her child, and you don't."

The trial judge found, upon reading this statement in context with Statement No. 6, that

> To the extent that the statement "implies that Hilary should live with Dr. Morgan, rather than visit or live with Dr. Foretich," ... it is only capable of carrying a defamatory meaning by implying that Hilary should live with Morgan rather than Foretich because Foretich is a sexually abusive parent.

Again, this statement is not capable of being defamatory independent of the claim that appellant sexually abused his daughters.

Statement No. 8. "In my case, all of the therapists said she should not even see him on supervised visits, as she is that terrified. She should certainly not go on unsupervised ones.

Judge Dixon has ignored everything, every therapist that's ever testified to [sic] in the D.C. Court. Absolutely ignored them."

The trial judge found that the statement, even if inaccurate (since "therapists [do] not speak with one voice") is capable of being defamatory only to the extent that it implies all therapists recommended that Hilary not visit appellant because he is a sexually abusive parent. Appellant argued that this statement is defamatory because it implies that the specialists recommended that Hilary not visit him. As the trial judge pointed out, the statement is not defamatory unless the reason she cannot visit is because appellant had sexually abused her.

Conceivably, the statement is capable of being defamatory because it states that appellant's daughter is so terrified of him that social workers are recommending that she not visit him. But accusing someone of having a terrified daughter does not rise to the level of defamation if the reason for the terror is unknown. *See Liberty Lobby, Inc. v. Anderson, supra*, 241 U.S.App.D.C. at 251, 746 F.2d at 1568 ("It is shameful that Benedict Arnold was a traitor; but he was not a shoplifter to boot, and one should not have been able to make that charge while knowing its falsity with impunity."). For example, the daughter could be terrified because she knew that she had done something wrong, or because there was something wrong with her perception of reality. But in the absence of any derogatory reason for her terror, the statement could only be defamatory if the reason she is terrified is because of sexual abuse by appellant.

Statement No. 9. "And yet Dr. Elizabeth Morgan has been prevented from using the testimony of your daughter. How do you feel about a justice system that won't allow her testimony to be used?"

The trial judge pointed out that, like Statement No. 5, this statement cannot be defamatory until the content of the testimony is known. Appellant argues that the statement is defamatory because "it implies that there was testimony by the older sister which was supportive of Dr. Morgan's allegations." The judge found, assuming that statement implied that the testimony supported appellee Morgan's allegations, that its defamatory meaning required that appellant prove that the allegations of sexual abuse are false.

Statement No. 10: "I find it very unusual. I would expect that most judges, or any good judge, would want to hear the evidence of both children ... I think that's a questionable comment on the judges's be—on his part."

The trial judge found that the statement is only "of and concerning" appellant to the extent that it bolsters appellee Morgan's claim. As discussed in regard to Statement No. 9, a statement cannot be defamatory unless appellee Morgan's claim is false. Again, any defamatory meaning depends on the presumption that the daughter's testimony would support appellee Morgan's allegations of child sexual abuse.

Statement No. 11: "Can you find it in your heart to forgive him?"

The trial judge found that this statement was capable of being defamatory only if it meant "can you find it in your heart to forgive Foretich for sexually abusing your child." Appellant argues that "there should be nothing for which she needs to forgive Dr. Foretich." This assumes that he did not sexually abuse his daughters, and he has chosen not to disprove that allegation. For the statements to be capable of having a defamatory meaning requires appellant to show that he did not sexually abuse his daughters.

Statement No. 12: "Have you learned something that might be helpful to other mothers and children going through what you've been through?"

The trial judge found that this statement is only capable of being defamatory to the extent it implied that what they have been going through together involves appellant's sexual abuse. Appellant again relied on the underlying sexual abuse allegation to argue that this statement is defamatory. He states that "it assumes that Sharon Sullivan and her daughter have been going through something together." No doubt appellee Sullivan and her daughter have been going through any number of things together. That is the very nature of a parent-child relationship. But the judge's finding fully answers appellant's argument.

Statement No. 13: "he has been cleared in both court cases ..."

The trial judge found that this statement is "essentially a reiteration of the kind of statement identified in statement number four," and while it may be false in a sense, "it could only be defamatory if coupled with the assertion that Dr. Foretich has done something (sexual abuse of his daughter) for which he should not have been cleared." Appellant maintains that because of the tone in which this was stated, it was an accusation. Even if it were an accusation, it is capable of being defamatory only if appellant had done nothing for which there was occasion to clear him or that he should not have been cleared.

Statement No. 14. "We have invited Dr. Foretich to appear on our next People Magazine special."

The trial judge found that, true or false, the statement cannot be considered defamatory because "inviting one embroiled in a public controversy to appear on television is neither an endorsement nor a repudiation of his position in the matter." Appellant argues that this statement is defamatory because it implies that the failure to broadcast appellant's story was his fault or failing, and that the tone used by the announcer conveyed a defamatory impression that appellant did not appear because he had something to hide or that the invitation implied a type of dare to explain or respond. Assuming appellant's judgment of the likely implications arising from the tone of voice is correct, the statement could at most imply that the person

*supra,* 278 U.S.App.D.C. at 226, 877 F.2d at 1014 (citing *McBride v. Merrell Dow and Pharmaceuticals, Inc.,* 230 U.S.App.D.C. 403, 408, 717 F.2d 1460, 1465 (1983)) (quoting *Levy v. American Mutual Liability Ins. Co.,* 196 A.2d 475, 476 (D.C.1964)). All of the fifteen statements center around the allegation of sexual abuse by appellant of his daughters. Without proving that that allegation is false, appellant cannot demonstrate that the other statements are capable of being defamatory. Nothing in the statements impugns appellant's reputation or character unless the child sexual abuse charges are true. Assuming the truth of appellant's allegations regarding voice tone, hand-holding and whispering by the interviewer to Sharon Sullivan, appellant still has failed to demonstrate that the statements were thereby capable of a defamatory meaning. Appellant's suggestion that "[f]alse allegations are so easy to make and, once made, so difficult to disprove," states a reality to which the law of defamation has given less weight than other interests. While we take no position on whether appellant sexually abused his children, we readily acknowledge the difficulty presented to appellant by having to prove what he alleges is a negative. But, in view of the parties' stipulations, *see* page 52–53, *supra,* appellant's difficulty arises from what the Supreme Court expressly acknowledged in *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 342, 94 S.Ct. at 3008, namely, that even "many deserving plaintiffs, including some intentionally subjected to injury, will be unable to surmount the barrier of the *New York Times* test."

 Similarly, we find no error by the trial judge in granting judgment to appellees on appellant's claim for intentional infliction of emotional distress. A state-

ment will support a claim for intentional infliction of emotional distress where the wrongdoer's conduct was intentional or reckless, the conduct was outrageous or intolerable because offensive to generally accepted standards of decency and morality, there was a causal connection between the conduct and the plaintiff's emotional distress, and that distress was severe. *Ruth v. Fletcher,* 237 Va. 366, 366–69, 377 S.E.2d 412, 412–13 (1989) (citing *Womack v. Eldridge,* 215 Va. 338, 341–43, 210 S.E.2d 145, 148 (1974)). *See Howard University v. Best,* 484 A.2d 958, 985 (D.C. 1984). The trial judge found that none of the fifteen statements "can be considered 'outrageous', such that the [appellees] might be considered, as a matter of law, to have committed the tort of intentional infliction of emotional distress." Appellant has not shown that appellees made false statements of fact with actual malice, and for the reasons noted in note 22, *supra,* we find no error.

### V

 Finally, appellant contends that the trial judge erred by failing to permit appellant to use a second television program videotape, involving Sharon Sullivan, to refute the statements in the first television program that she was a "surprise witness" or that the show had a "late-breaking exclusive."[23]

Assuming that the trial judge, under Rule 56, should have allowed appellant to use this late-found second videotape, appellant states that it would only show that certain statements made by Sharon Sullivan were false. The trial judge properly found that both statements—"a surprise

---

did not dare to be interviewed on national television. This is probably true of a great many people in the United States, and is not, by itself, capable of being defamatory.

Statement No. 15: "late-breaking exclusive on the Morgan case ..."

The trial judge found that "[t]his statement is of the ilk previously identified in statement number two...." Appellant argues that this statement is defamatory because it implies that there was new information that would give

credibility to the claims of appellees Morgan and Sullivan. Again, the only way that the statement could give credibility would be to address the issue of child sexual abuse which was the basis for the claims.

**23.** Appellant claimed that he only found this second videotape after the trial judge had granted judgment for appellees. It involved a program that was viewed on November 28, 1988. It was apparently filed in *Foretich v. Advance Magazine Publishers Inc.,* 765 F.Supp. 1099 (1991).

**64**

witness in the case" and "late-breaking exclusive on the Morgan case . . ."—could not be defamatory regardless of whether they were true or not. Accordingly, we find no abuse of discretion by the trial judge in denying appellant's Rule 59(e) motion. *See Wallace v. Warehouse Employees Union*, 482 A.2d 801, 810 (D.C.1984).

Accordingly, we affirm the judgments for appellees and the order denying appellant's motion to vacate the judgments.