Lawrence Douglas WILDER, Plaintiff,

v.

JOHNSON PUBLISHING CO., INC., Defendant.

Civ. A. No. 82–0627–R.

United States District Court, E.D. Virginia, Richmond Division.

Nov. 30, 1982.

Roger L. Gregory, Richmond, Va., for plaintiff.

Michael W. Smith, David C. Kohler, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., I.S. Leevy Johnson, Johnson, Toal & Battiste, P.A., Columbia, S.C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a resident of Virginia, brings this action for libel against the publisher of *Jet* magazine, an Illinois corporation. Plaintiff invokes this Court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. The matter comes before

the Court on defendant's motion under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the action for failure to state a claim upon which relief can be granted. On a motion to dismiss, the allegations of the complaint are, of course, presumed to be true. *See, e.g., Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Thus, factual matters set forth in this memorandum recite the plaintiff's allegations and do not constitute findings of fact by the Court. In the interests of brevity and simplicity, the Court will not qualify all such factual statements with terms such as "allegedly."

Plaintiff is a member of the Senate of the Commonwealth of Virginia and is an attorney. He complains that an article[1] appearing in volume 62, number 19 of *Jet* magazine defamed him. Defendant has moved to dismiss on the sole ground that the statements in the article are not capable of a defamatory construction as a matter of law. In considering defendants's motion in this diversity matter, the Court must apply Virginia law. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Virginia law, the defamatory meaning of published words may appear from the face of the publication ("defamation *per se*") or may arise by innuendo from the published words in combination with known extrinsic facts, the "inducement" ("defamation *per quod*"). *See, e.g., Carwile v. Richmond Newspapers, Inc.,* 196 Va. 1, 7, 82 S.E.2d 588, 592 (1954). Despite plaintiff's protestations that he does not concede that the publication in the instant

---

1. The full text of the article is:

Henry Marsh is Voted Out
As Richmond, Va., Mayor;
Roy A. West Gets Office

A friendship that started as neighborhood kids, grew stronger as roommates at the Howard law school, and continued as they led the struggle for power in Richmond, Va., snapped suddenly and the state's most publicized political civil rights champion, Henry Marsh III was deposed as the mayor of Richmond.

His longtime crony, State Senator L. Douglas Wilder, who has been outspoken in civil rights, but has run second to Marsh in promi-

nence, switched support to school principal Roy A. West, a newly elected city councilman, who then joined four White councilmen to put himself in office. The mayor is elected by a majority of the council members.

The anti-Marsh feeling had been growing in downtown business circles, but Marsh, because of a narrow 5–4 margin, managed to keep his mayorality slot in the previous election.

The switch of the one Black vote was costly, and West afterwards told the press that Wilder had abandoned Marsh and urged him to "Go for the roses."

**624**

matter is not defamatory *per se,* the only theory he has advanced to the Court is that the publication is defamatory *per quod.*

The subject article, reprinted in full in note 1 *supra,* describes the mayoral election in Richmond, Virginia wherein the City Council elected Roy A. West mayor to replace Henry Marsh, III, "the state's most publicized political civil rights champion." The article mentions plaintiff by name and essentially states that plaintiff helped bring about the election result by switching his support from Marsh to West. Paragraph 8 of the complaint sets out the inducement,[2] that is, the extrinsic facts plaintiff offers as background to the article. In paragraph 13 of his complaint, plaintiff in effect asserts that the article and the inducement give rise to the following defamatory meaning by innuendo: plaintiff "deceitfully abandon[ed] Marsh, a prominent Civil Rights leader, for reasons of jealousy, and undermin[ed] and harm[ed] the political interests of his [plaintiff's, presumably] constituents in Richmond."[3] Defendant contends that such an innuendo does not flow from the article and the inducement and that the ascribed meaning is, as a matter of law, not defamatory.

The Court rejects the latter contention. Defendant proffers the following definition of defamation from W. Prosser, *Handbook of the Law of Torts* § 111, at 739 (4th ed. 1971) (footnotes omitted):

> Defamation is rather that which tends to injure "reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. It necessarily, however, involves the idea of disgrace . . . .

The defamatory meaning plaintiff attributes to the article involves two accusations: that plaintiff "deceitfully abandon[ed]" Marsh, his longtime friend, "for reasons of jealousy," and that plaintiff "undermin[ed] and harm[ed]" his black constituents' interests. The Court is satisfied that such accusations, if made, would at least "tend[ ] to . . . diminish the esteem, respect, goodwill or confidence in which the plaintiff is held." Certainly the Court cannot say as a matter of law that such accusations would not even "tend to" have such an effect.

■ This, however, is not the end of the quest as to the disposition of the pending motion. For plaintiff to state a claim under Virginia law, this defamatory meaning

---

**2.** The full text of the statement of inducement is:

> On July 1, 1982, the newly elected City Council of Richmond, Virginia held a meeting to elect a mayor from its membership. A majority of the Council, consisting of Roy West and four white council members, elected West as mayor. The previous mayor, Henry Marsh, III, who had served in that office since 1977, was supported by the other black members of the Council.
>
> Henry Marsh, III, the first black mayor of Richmond, was very popular among black voters, and, for the most part, enjoyed the support of the black community city-wide. During Marsh's tenure as mayor, he led a majority faction of black council members that for the most part, controlled the City Council in Richmond. Marsh's defeat was a stunning set back to the political bloc. In the view of many blacks, Marsh, as mayor, symbolized the new, black political power in Richmond. Many blacks viewed the defeat of Marsh as a major set back for black progress in Richmond city government. The prevailing reactions to Marsh's defeat in the

black community were that of disgust and anger.

> Plaintiff's senatorial district is largely situated in the City of Richmond, and over seventy percent of his constituents are black residents of Richmond. Plaintiff has a general law practice of the City of Richmond, and most of his clients are black residents of Richmond. Plaintiff lives in the City of Richmond.

**3.** At the hearing on this motion, plaintiff's counsel restated the proposed defamatory meaning as accusing plaintiff of being a "backstabber" and an "Uncle Tom." To the extent such a meaning goes beyond that set forth in the complaint, the Court cannot consider it, since the motion before the Court asserts that the complaint, as pleaded, does not state a claim. While the Court may accept that an accusation of being a "backstabber" is roughly equivalent to an accusation of "deceitfully abandoning" a longtime friend, the Court cannot accept that an accusation of being an "Uncle Tom" corresponds to any defamatory meaning plaintiff has alleged as attaching to the article.

must flow readily from the statements and the inducement. "It is a clear rule of law, that innuendo cannot introduce a broader meaning than that which the words, taken in connection with the [inducement], would naturally bear." 12A Michie's Jurisprudence *Libel & Slander* § 40, at 115 (1978); *see, e.g., Carwile v. Richmond Newspapers, Inc.,* 196 Va. at 8, 82 S.E.2d at 592.

Applying that principle to the first accusation plaintiff derives, the Court concludes that the proposed innuendo cannot be drawn. The only statement in the article from which any suggestion could be inferred that plaintiff was "jealous" of Marsh is that plaintiff "has run second to Marsh in prominence." But even supposing that statement were strong enough to accuse plaintiff of jealousy, nothing in the article suggests that such jealousy motivated plaintiff's actions in regard to the mayoral election. Similarly, the article attributes to West a statement that plaintiff had "abandoned" Marsh, but even supposing defendant to be responsible for that statement, nothing in the article suggests that there was anything "deceitful" in plaintiff's actions; rather, the article simply says the plaintiff's friendship with Marsh "snapped suddenly," without laying blame for the "snap" to either former friend. The inducement adds absolutely nothing to establish jealous motivation or deceitful abandonment.

The inducement does, however, add a great deal of support to the conclusion that the article accuses plaintiff of "undermining and harming the political interests of his black constituency." The inducement, which for purposes of this motion must be taken as true, states that over seventy percent of plaintiff's constituents are black. The statement in the inducement that "[i]n the view of many blacks, Marsh, as mayor, symbolized the new, black political power in Richmond" adds a factual gloss to the article's designation of Marsh as "the state's most publicized political civil rights leader" to whom plaintiff, a state senator, had "run second ... in prominence." The inducement further states:

Marsh's defeat was a stunning set back [sic] to the [black] political bloc .... Many blacks viewed the defeat of Marsh as a major set back [sic] for black progress in Richmond city government. The prevailing reactions to Marsh's defeat in the black community were that of disgust and anger.

Taking as true the inducement's assertions that the defeat of Marsh was politically harmful to the black community and that a majority of plaintiff's constituents are black, the article's clear indication that plaintiff helped procure that defeat leads naturally and logically to the conclusion that the article in effect says the plaintiff harmed the political interests of his black constituents.

The Court concludes that of the two defamatory meanings plaintiff attributes to the article in paragraph 13 of his complaint, only the second meaning naturally follows by innuendo from the published words and the inducement. Thus, plaintiff has only stated a claim that the article accuses him of "undermining and harming the political interests of his black constituents in Richmond." The claim that the article accuses plaintiff of "deceitfully abandoning Marsh, a prominent Civil Rights leader, for reasons of jealousy," will be dismissed.

An appropriate order will enter.

### ORDER

For the reasons stated in the memorandum of the Court and deeming it proper so to do, it is ADJUDGED and ORDERED that defendant's motion to dismiss be and the same is hereby denied.

Counsel are advised that the case will be tried on the issue referred to in the Court's memorandum and such other issues as may arise in light of defendant's Answer to the Complaint.