George C. REEVES, Plaintiff-Appellant,

v.

AMERICAN BROADCASTING COMPA-
NIES, INC., Roone Arledge, and Ever-
ett Erlick, Defendants-Appellees,

v.

Joseph O. GIAIMO,
Counterclaim-Defendant.

No. 157, Docket 83–7352.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1983.
Decided Oct. 11, 1983.

Giaimo & Vreeburg, Forest Hills, N.Y., of
Counsel, for plaintiff-appellant.

Coudert Brothers, Hawkins, Delafield &
Wood, New York City (Michael J. Calvey,
Peter M. Nelson, New York City, of coun-
sel), for defendants-appellees.

Before KAUFMAN, MESKILL and
PIERCE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

A nation which prizes free expression
must support lofty sentiment with mean-

ingful legislation. The noble guarantee against laws abridging the freedom of the press, enshrined in the First Amendment, would be incongruous indeed, were any federal or state statutes to punish a journalist for accurately reporting allegations of wrongdoing in a matter of public interest. We said in *Edwards v. National Audubon Society, Inc.,* 556 F.2d 113, 115 (2d Cir.1977), an unfettered press "must be the most cherished tenet" of a self-governing society. Since *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), federal courts have sought to give practical effect to this ideal. In *Edwards, supra,* we discussed the import of assuring that accurate reports of newsworthy accusations of malfeasance be immune to action under defamation laws, since "fair and dispassionate" news accounts would be discouraged and public enlightenment on matters of concern would thereby be diminished. *Edwards v. National Audubon Society, Inc., supra,* 556 F.2d at 122.

We are invited today to reverse a finding of statutory privilege completely consistent with these basic democratic values. George Reeves asks us to rule that granting summary judgment in favor of the American Broadcasting Companies, Inc. ("ABC") on his defamation count was erroneous because a California statutory privilege does not extend to reports of charges made to a grand jury. We are convinced the statute was correctly construed and our conclusion is buttressed by fundamental precepts of free expression. Accordingly, we affirm the judgment. Before turning to the legal questions presented, we believe it would be useful to set forth the facts so that the legal issues are placed in focus.

## FACTS

In recent years, the entertainment industry has been buffeted by controversy regarding the intricate financial maneuvers which characterize the world of show business. Some entertainers alleged producers were cheating them of profit participations (as in the case of James Garner and the television program "The Rockford Files").

Movie mogul David Begelman was forced to resign as President of Columbia Pictures when proof of bookkeeping irregularities was brought to light, although Begelman's exile from Hollywood was brief and he once again produces films.

The history of the instant dispute began when an attorney for ABC named Jennifer Martin charged in 1979 that top network executives colluded with producers Aaron Spelling and Leonard Goldberg to defraud Robert Wagner and his wife, the late Natalie Wood, of their 46% profit participation in the popular television show "Charlie's Angels." Martin's contentions, in sum, were that the producers inflated expenses and were permitted to do so by ABC officials whose responsibility was to assure the legality and propriety of financial dealings. Martin directly implicated one of her superiors in the Contracts Department, ABC Vice President Ron Sunderland, who, according to Martin, bluntly told her Spelling and Goldberg were "blanking the Wagners out of their money." Reeves, at that time Senior Vice President for Theatrical Motion Pictures and Television Affairs for ABC, was Sunderland's superior and accordingly allegedly associated with the claimed misdeeds.

ABC was concerned about the charges, since the network and Spelling-Goldberg enjoyed a lucrative association dating to the 1960s. The producers supplied the network with such successful and profitable programs as "The Mod Squad," "Starsky and Hutch," "Fantasy Island," "Hart to Hart" (in an ironic turn, starring Robert Wagner), and "The Love Boat." The Spelling-Goldberg creation which aroused Martin's suspicions, "Charlie's Angels," was a fanciful detective program featuring an unseen man supervising three glamorous female investigators who managed to bring malefactors to justice while remaining pulchritudinous throughout. The network quickly concluded an internal investigation into Martin's charges led by a lawyer who had represented ABC in the past. The report was brought to the attention of the Los Angeles County District Attorney, who commenced

a grand jury inquiry into the allegations. The Securities and Exchange Commission, Federal Communications Commission, and Department of Justice also were to examine the accusations in the months ahead. No formal charges were ever filed against any individual or corporate entity.

The investigations were not yet public knowledge when Jennifer Martin was fired, allegedly for incompetence, late in 1979. She repeated her story to the news media in 1980, and extensive coverage in the *New York Times, People, Time,* and other publications ensued. Reeves gave several interviews, including one with the *Times.* Later in the year, ABC News, a division of ABC, determined to broadcast a story on the allegations. The story was prepared for the network's nightly news report, normally devoted to international affairs, domestic politics, and other weighty matters. Public interest in, and media attention to the "Charlie's Angels" affair seemed to vindicate the truth of the nostrum, "Everyone has two businesses: his own, and show business."

The story was aired on the network's "World News Tonight" program on August 25, 1980. ABC's anchorman the late Frank Reynolds and correspondent Charles Gibson together spent 4 minutes, 20 seconds on the report. Gibson explained Martin's accusations that the Wagners were being defrauded, and reported charges of favoritism between Spelling-Goldberg and top ABC officials, who were real estate business partners of Goldberg. The story mentioned ongoing grand jury and SEC investigations and noted no indictments or charges had been filed.

Reeves had given a 10-minute interview to ABC in which he commented on the story. The broadcast report contained a ten-second denial from Spelling ("There was never, never any effort to deprive Mr. and Mrs. Wagner of one cent of the profit they would share as a result of their profit participation in Charlie's Angels") and a four-second excerpt from the Reeves interview:

> ABC Reporter: It was Sunderland, [Martin] claims, who told her bluntly that with the exclusivity billing, Spelling-Goldberg were "blanking the Wagners out of their money."
>
> Reeves: Now I said to Ron, I said, "Ron, did you say that? That's crazy man. How the hell do you know something like that?" He said, "Well, I ... I was just ... I blew my top." I said ... he said, "I don't even remember if I said that, George."

Reeves sued ABC alleging, *inter alia,* defamation based on the news report.[1] ABC and co-defendant Roone Arledge (President of ABC News) moved for summary judgment on the defamation count. The district court judge granted the motion, reasoning that California law applied and that the state's statutory law grants an absolute privilege for a "fair and true report ... of judicial ... or other public official proceeding[s] ... or anything said in the course thereof." Cal.Civ.Code § 47(4) (West 1982).[2]

---

**1.** Reeves also alleged breach of contract and fraudulent misrepresentation; these actions are not subjects of this appeal. Judge Werker refused to dismiss certain defamation counterclaims against Reeves and his lawyer Joseph Giaimo asserted by Roone Arledge (President of ABC News) and Everett Erlick (ABC General Counsel). When Judge Werker declined to permit an appeal from the denial on that motion to dismiss, Reeves and Giaimo filed a mandamus action against Judge Werker. The mandamus action is pending in this Court. *In re George C. Reeves and Joseph Giaimo,* No. 83–3036 (2d Cir. *appeal docketed* June 15, 1983).

**2.** Cal.Civ.Code § 47 provides in pertinent part: A privileged publication or broadcast is one made—

. . . . .

(2) In any ... judicial proceeding, or ... any other official proceeding authorized by law . . . .

. . . . .

(4) By a fair and true report in a public journal, of (1) a judicial, (2) legislative, or (3) other public official proceeding, or (4) of anything said in the course thereof . . . .

Cal.Civ.Code § 47 (West 1982).

## DISCUSSION

Before reaching the core issue of statutory construction, Judge Werker considered the threshold question of which state law pertained. He concluded the law of California, domicile and principal place of business of Reeves, was applicable. We are urged to find this evaluation erroneous by an appellant who believes New York, the forum state and principal place of business of ABC, adheres to legal principles more sympathetic to his cause. Nevertheless, we hold that the trial court correctly concluded California law should apply.

■ It is axiomatic that a federal court sitting in diversity follows the choice of law principles of the state of its situs. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York law mandates application of the law of the state with the most significant relationship to the issues in dispute. *Nader v. General Motors Corp.,* 25 N.Y.2d 560, 255 N.E.2d 765, 307 N.Y.S.2d 647 (1970). Accordingly, it is proper for a federal court in New York to apply the case-by-case balancing test of the *Restatement (Second) of the Conflict of Laws* (1971). *Bio/Basics International v. Ortho Pharmaceutical Corp.,* 545 F.Supp. 1106, 1113 (S.D.N.Y.1982). Judge Werker correctly applied the significant relationship test. His factual determination that Reeves would suffer the most damage to his reputation in his home state was not clearly erroneous, since the state of the plaintiff's domicile will usually have the most significant relationship to the case. *Restatement, supra,* at § 150(2). The initial decision to apply California law, therefore, was entirely proper.

■ We now turn our attention to the cynosure of controversy, the applicability of California's statutory privilege to ABC's report. Cal.Civ.Code § 47 was enacted in 1872, and legislative history is unavailable. The section was amended in minor fashion in the century since its promulgation, but the provision at issue, § 47(4), was last altered in 1945. Moreover, California courts have never ruled on the dispositive question whether the § 47 privilege applies to a news story detailing charges made in a secret grand jury proceeding. In such a case, a federal court sitting in diversity must appraise what the state's highest court would rule to be its law. *Brastex Corp v. Allen International, Inc.,* 702 F.2d 326, 330 (2d Cir.1983). Accordingly, we proceed to examine prior California cases construing the disputed sub-section, relevant opinions relating to other sub-sections of § 47, and accepted treatises and other authoritative sources, as would the California Supreme Court if confronted with this question.

■ While there are valid public policy reasons for grand jury secrecy, *see United States v. Proctor & Gamble,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–986 n. 6, 2 L.Ed.2d 1077 (1958), it is beyond doubt "that state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 102, 99 S.Ct. 2667, 2670, 61 L.Ed.2d 399 (1979). California courts would be guided by this prescript, and, in any event, California's case law unambiguously indicates a concern for unfettered accurate press coverage even of secret proceedings. The privilege extends to press coverage of "judicial proceeding[s]", a term generally broadly defined to include "any hearing before a tribunal which performs a judicial function ... whether the hearing is public or not." *Prosser on Torts* (4th ed. 1971) § 114 at 777–79. That § 47 comports with this conception is evidenced by California's treatment of the analogous § 47(2) privilege for statements made in the course of an official proceeding, since it is clear this applies to investigations closed to the public. *Tiedemann v. Superior Court,* 83 Cal.App.3d 918, 925, 148 Cal.Rptr. 242, 247 (Ct.App.1978).

The § 47(2) privilege pertains not to press accounts of statements made to judicial proceedings, but to the actual statements. We therefore acknowledge that *Tiedemann, supra,* is not dispositive on the issue of the meaning of "judicial proceeding[s]" for purposes of § 47(4). But, we note that each sub-section uses the same phrase, and in each case there is an inde-

pendent basis for concluding the expression refers to secret proceedings. In § 47(2), as California cases make abundantly clear, the privilege extends to any statement, whether or not true, made in the course of a secret judicial proceeding, since public policy requires witnesses to feel unconstrained to give testimony before investigative bodies without fear of later liability for defamation. *Brody v. Montalbano,* 87 Cal.App.3d 725, 733, 151 Cal.Rptr. 206, 212 (Ct.App. 1978). Section 47(4) indicates a policy of dissemination of information in the public interest by extending the privilege only to "fair and true" accounts, without any further restrictions on the term "judicial proceeding[s]".

The maxim of statutory construction *expressio unius est exclusio alterius* reinforces the mandate of simple logic that the "fair and true" requirement, rather than the stipulation that applicable judicial proceedings be open to the public, is meant to be the legal and policy restriction on the § 47(4) privilege. Just as public interest is furthered by the provision in § 47(2) that the statement be made in the course of the applicable proceeding, so public policy is advanced by the § 47(4) privilege, modified by the "fair and true" requirement. A logical reading of § 47(4), therefore, would be that "fair and true" press accounts of secret testimony are privileged. We again aver that this conclusion is buttressed by the reasoning of *Edwards, supra,* and the considerations of free expression therein discussed.

There is only one California case of note construing the scope of the § 47(4) privilege, and it fully comports with our conclusion that protection extends to fair and true accounts even of secret proceedings. In *Hayward v. Watsonville Register-Pajaronian and Sun,* 265 Cal.App.2d 255, 71 Cal. Rptr. 295 (Ct.App.1968), a California court considered whether the § 47(4) privilege extends to a newspaper account of criminal allegations based on police department and FBI sources. Quoting earlier cases from California and elsewhere, the *Hayward* court found the privilege applicable if based on sources connected with the history of a

judicial proceeding, including law enforcement agency reports and "the oral statements of district attorneys." *Id.* 71 Cal. Rptr. at 299. As in *Hayward,* the instant news report was based on many sources, including previous press accounts and interviews with Reeves. ABC's account of the "Charlie's Angels" affair was also similar to the *Hayward* news story since the network reported there were allegations against Reeves and noted no charges had been filed.

In addition to the specific holding of *Hayward* that the privilege extends to true accounts of allegations made by and to law enforcement officials, the case is important for its *ratio decidendi.* Quoting earlier California authority, *Hayward* stated "[i]n determining the scope of the term 'judicial proceeding' within the purview of the rule, the courts of this state seem to take a comparatively broad view of the question." *Id.* 71 Cal.Rptr. at 299. Moreover, the *Hayward* court, confronted as we are here by an undecided question of § 47(4) privilege, reasoned by analogy and consideration of public policy principles in making its determination. We conclude Judge Werker correctly estimated that a California court would decide § 47(4) applies to a fair and true report of charges made to a grand jury.

Because the "fair and true" requirement is the principal restriction upon the § 47(4) privilege, we have scrutinized the challenged news account with great care in this regard. A "fair and true" report is one which "captures the substance" of the proceeding "measured by the natural and probable effect . . . on the mind of the average reader [and viewer]." *Kilgore v. Younger,* 30 Cal.3d 770, 777, 180 Cal.Rptr. 657, 661, 640 P.2d 793, 797 (1982). The "World News Tonight" story, judged by this standard, was both fair and true. It reported charges were being investigated and specifically mentioned no indictment had been handed up. The "fair and true" standard "does not require the reporter to resolve the merits of the charges, nor does it require that he present the [plaintiff's] version of the facts." *Rollenhagen v. Orange,* 116 Cal.

App.3d 414, 172 Cal.Rptr. 49, 56–57 (Ct.App. 1981). ABC in fact did more than meet this minimum requirement, since its accurate report that allegations were being investigated was accompanied by Reeves's denial.

Appellant asserts the excerpt used in the report was not in fact a denial, but instead implied he did not refute the charges and merely expressed shock that they were being revealed. He proceeds to contend summary judgment should not have been granted because the question whether the report was "fair and true" must go to a jury. In a defamation suit where, as here, the facts are undisputed, however, the court may resolve the issue of fairness and truth as a matter of law. *Kilgore v. Younger, supra,* 30 Cal.3d at 777, 180 Cal.Rptr. at 661, 640 P.2d at 797; *Tiedemann v. Superior Court, supra,* 148 Cal.Rptr. at 247; *Hayward v. Watsonville Register-Pajaronian and Sun, supra,* 71 Cal.Rptr. at 300. The trial court is not required to adopt Reeves's strained interpretation of the denial, since the average viewer hearing Reeves's reported words would conclude that Reeves demanded to know of his subordinate why he would make such an allegation. In the context of the broadcast story, immediately following Spelling's denial, the average viewer would conclude Reeves refuted the charges. *See Kilgore v. Younger, supra,* 30 Cal.3d at 777, 180 Cal.Rptr. at 661, 640 P.2d at 797.[3]

■ We conclude that California statutory law provides ample authority for a finding of privilege. There is no need to reach the question whether a constitutional privilege obtains. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Nevertheless, we note that

cases interpreting the Constitution provide additional support for our conclusions. We observe first that "the special protected nature of accurate reports of judicial proceedings has repeatedly been recognized." *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 1045, 43 L.Ed.2d 328 (1975). The sound basis for this policy is that individuals with limited time and resources to gather information concerning matters of public import rely upon the press to perform this critical task. *Id.* 420 U.S. at 491, 95 S.Ct. at 1044. The Supreme Court has stressed the importance of this right of access to information regarding charges made in confidential government tribunals in various contexts. *See, e.g., Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 841, 98 S.Ct. 1535, 1542, 56 L.Ed.2d 1 (1978). If the public is to learn about such newsworthy charges, the press must be relatively immune from defamation liability for accurate reporting of allegations. *Edwards v. National Audubon Society, Inc., supra,* 556 F.2d at 120. Our statutory inquiry focussed upon the fairness and truth of the report, and the sources used, and the Supreme Court has indicated these are the critical factors in a determination of privilege. *See Smith v. Daily Mail Publishing Co., supra,* 443 U.S. at 102–03, 99 S.Ct. at 2670–71.

It is therefore clear our holding comports with a worthy tradition safeguarding journalistic dissemination of accurate reports of newsworthy allegations of wrongdoing. Because ABC's news report fairly and truthfully reported charges made in connection with a grand jury proceeding, the network is privileged against Reeves's defamation suit and summary judgment was prop-

---

**3.** Appellant contends a "fair and true" report can never be based on secret grand jury testimony, relying upon *Bufalino v. Associated Press,* 692 F.2d 266 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983). This reliance is misplaced. *Bufalino* held that under Pennsylvania law, a common law "official statement" privilege does not extend to a report based wholly on confidential sources. Although the ABC story was based partly on undisclosed sources, they were only used to corroborate information obtained from

published reports and District Attorney press statements. Moreover, *Restatement (Second) of Torts* § 611 (1966), the applicable standard in *Bufalino, supra,* is narrower than Cal.Civ. Code § 47, which California courts have applied to secret proceedings, pre-arrest police statements, and unnamed sources. *See Tiedemann v. Superior Court, supra,* 83 Cal.App.3d at 926, 148 Cal.Rptr. at 247; *Rollenhagen v. Orange, supra,* 116 Cal.App.3d at 414, 172 Cal. Rptr. at 56–57.

**608**

erly granted. Accordingly, the judgment is affirmed.