**BIOSPHERICS, INC.**

v.

**FORBES, INC., et al.**

No. Civ.A. DKC 97–2320.

United States District Court, D. Maryland.

Dec. 16, 1997.

.David J. McManus, Jr., Baxter, Baker, Sidle & Conn, P.A., David Bryan Applefeld, Smith, Somerville and Case, Baltimore, MD, Mark C. Harwell, Morris & Campbell, PH, Houston, TX, for Biospherics Incorporated, plaintiff.

## MEMORANDUM OPINION

CHASANOW, District Judge.

This is a diversity action alleging libel. Plaintiff ("Biospherics") is a publicly held Delaware corporation with its principal place of business in Beltsville, Maryland. The stock of the company is traded on NASDAQ. Defendants are a New York corporation which publishes a national business magazine ("Forbes") and one of its writers, Caroline Waxler ("Ms.Waxler").

The gravamen of Biospherics' Complaint is that Defendants published false statements which caused a diminution in the "value" of Biospherics stock.[1] Defendants have moved to dismiss the Complaint pursuant to FED. R.CIV.P. 12(b)(6). The motion has been fully briefed and no hearing is deemed necessary. Local Rule 105.6.

### I.   Standard of Review

A motion to dismiss pursuant to FED. R.CIV.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). On a motion to dismiss, the court must consider well-pled allegations in a complaint as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Allegations are to be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

▪ FED.R.CIV.P. 12(b) also provides that when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Generally, then, when documents which were not appended to the Complaint are submitted to the court in connection with a Motion to Dismiss pursuant to Rule 12(b)(6), those documents either are not considered or the motion is converted to a summary judgment motion with proper notice to the parties. An exception to the general rule is made for documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action. *See, Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991) *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). That exception has been recognized with favor and relied upon in this circuit and district. *See, New Beckley Min. Corp. v. International Union, United Mine Workers of America,* 18 F.3d 1161, 1164 (4th Cir.1994); *In re Medimmune, Inc. Securities Litigation,* 873 F.Supp. 953, 957 (D.Md.1995). Defendants have appended to their Motion to Dismiss a photocopy of the page from the magazine which contains the purportedly offending ar-

---

1. The Complaint states that the article published by Defendants caused "the suppression and diminution of value" of its stock from 6 5/8 per share on the day the information was published to 4 7/8 six and one-half months later.

ticle. Biospherics raises no objection to the inclusion of the photocopy with Defendants' motion and, in fact, has appended to its response two exhibits, one of which is a retyped version of the same article. Accordingly, the court will consider the exhibits in ruling on the Motion to Dismiss.

## II. Background

Biospherics states that it obtained a patent in 1988 on the use of a naturally occurring sugar, D-tagatose, as a low-calorie, nonfattening sweetener. It is sometimes referred to as "Sugaree." The company has been developing the product for use as a food additive since obtaining the patent. (Complaint, para.10–11).

Forbes, in its January 13, 1997 issue, published an article in "Money & Investments" section on a page captioned "Streetwalker." The page contains three short pieces regarding investment in the stock of three companies, one of which was Biospherics. The Biospherics article bears a downward arrow in the initial paragraph and the other two articles bear upward arrows. The Biospherics article carries the one-line headline "Sweet-talkin' guys". (Paper No. 7, Exhib. A).

Plaintiff claims that the following statements in the article are false and defamatory:

(a) "Sugaree isn't up to the company's claims",

(b) "the company's been developing [Sugaree] for 15 years", and

(c) "Biospherics shares are easy to borrow; the few independent analysts who follow the company think its stock is worth $2 a share on current business."

(Complaint, para.12–13).

## III. Analysis

■ Defendants claim that neither the column as a whole, nor any of the statements considered separately, is susceptible of defamatory meaning and thus the complaint fails to state a claim. They also assert that the statements are, in any event, not provably false and thus not actionable. The court finds that the complained of language in the Forbes publication, taken in proper context, might be construed as defamatory, but nevertheless is constitutionally protected.[2] Accordingly, for the reasons set forth below, Defendants' Motion to Dismiss will be granted by separate order.

The court in *Golden North Airways v. Tanana Publishing Company*, 218 F.2d 612, 624 (9th Cir.1954) (citations omitted), aptly described the difference between individuals and corporations when it comes to defamatory meaning:

It is to be borne in mind that we are dealing with a corporation and not an individual. While it is true that a corporation may be libeled, by the very nature of things, what is libel against an individual may not necessarily be a libel against a corporation or an unincorporated company. Since a corporation has no character to be affected by libel and no feelings to be injured, an article to be libelous as to a

---

2. In diversity actions, the choice of law rules of the state in which the district court sits determine the applicable substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As to tort claims, Maryland follows the doctrine of *lex loci delicti*. *See, White v. King*, 244 Md. 348, 223 A.2d 763, 766 (1966). However, as Judge Williams pointed out in *Fornshill v. Ruddy*, 891 F.Supp. 1062, 1069 (D.Md.1995), *aff'd*, 89 F.3d 828 (4th Cir.1996), the Maryland courts have not addressed the question of multistate defamation posed by publication in a national journal such as Forbes. Judge Williams, agreeing with the approach taken in *Crowley v. Fox Broadcasting Co.*, 851 F.Supp. 700, 702 (D.Md.1994), looked to the Restatement (Second) of Conflict of Laws, (1971 & Supp.1995), Section 150 of which is entitled

"MULTISTATE DEFAMATION" and provides in pertinent part:

(1) The rights and liabilities that arise from defamatory matter in any one edition of a … newspaper … are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties ….

…

(3) When a corporation … claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation … had its principal place of business at the time, if the matter complained of was published in that state.

In this case, that would be Maryland.

corporation must have a tendency to directly affect its credit or property or cause it pecuniary injury. The matter must, in the language of the Restatement, tend 'to prejudice it in the conduct of its trade or business or to deter third persons from dealing with it.'

The Forbes column meets that test.

Defendants' second argument, however, is substantial and requires dismissal of the complaint. The Supreme Court uttered the *dictum* that statements of opinion are protected by the First Amendment in *Gertz v. Welch*, 418 U.S. 323, 339–49, 94 S.Ct. 2997, 3006–11, 41 L.Ed.2d 789 (1974):

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

Relying upon *Gertz* and *Ollman v. Evans*, 750 F.2d 970, 979–84 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985), this circuit, in *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280 (4th Cir.1987), fashioned a test whereby "opinion" could be differentiated from "fact." [3] The court wrote that the "minimum threshold issue" to be addressed in this determination is whether the statement in question is verifiable. "If the defendant's words cannot be described as either true or false, they are not actionable." *Id.* at 1288. The court then wrote of the second step in its test:

> Even when a statement is subject to verification, however, it may still be protected if it can best be understood from its language and context to represent the personal view of the author or speaker who made it. Thus we reject the suggestion ... that any "question of fact" which can be decided by a jury can be actionable in defamation.
>
> ...
>
> We hold that a verifiable statement ... nevertheless qualifies as an "Opinion" if it

is clear from any of the three remaining *Ollman* factors, individually or in conjunction, that a reasonable reader or listener would recognize its weakly substantiated or subjective character—and discount it accordingly.

*Id.* The three remaining *Ollman* factors to be considered, once a statement is determined to be verifiable, are the author's choice of words; the context of the challenged statement within the writing as a whole; and the "broader social context into which the statement fits." *Id.* at 1287–88.

■ The Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20, 110 S.Ct. 2695, 2705–2706, 111 L.Ed.2d 1 (1990), squarely disavowed an intent to create "an artificial dichotomy between 'opinion' and fact" in which statements of opinion were absolutely protected by the First Amendment from liability under state defamation law. The Court made clear, nevertheless, that protection is extended to media defendants for statements on matters of public concern which are not provable as false or cannot be reasonably interpreted as stating fact. However, even statements of "opinion" move outside the protection of the constitutional shield when they imply the existence of false or defamatory facts. *Id.* at 19–20, 110 S.Ct. at 2705–06. Despite *Milkovich*, the parties agree that the test set forth in the *Potomac Valve* for separating protected from unprotected utterances retains its vitality. *See, Henry v. National Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204 (D.Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir.1994); *Chapin v. Greve*, 787 F.Supp. 557 (E.D.Va. 1992), *aff'd sub nom. Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087 (4th Cir.1993).

Defendants argue that none of the three statements is provably false, but all rather are subjective statements of opinion, opinions based on disclosed facts, or substantially true. Further, they argue that the context and the writer's choice of words makes the column protected.

■ The first alleged libel, "Sugaree isn't up to the company's claims," is *part* of the sentence:

---

**3.** The court also noted that whether a statement constitutes fact or opinion is a matter of law for

the trial court to decide. *Id.* at 1285, n. 12.

Investors will sour on Biospherics when they realize that Sugaree isn't up to the company's claims.

The sentence is followed by an explanation:
Even if the FDA okays BINC to produce Sugaree—a big if—its cost to consumers would be at best five times the price of sugar. Meanwhile Johnson & Johnson and Hoechst are working on their own, cheaper, sweeteners. Monsanto is perfecting its NutraSweet sugar substitute.

The paragraph is preceded by the following sentence:
Bullish analyst reports, paid for by the company, propelled the shares from a split adjusted 4 1/8 to 9½ in 1996.

In short, the statement that "Sugaree isn't up to the company's claims" is part of a prediction that the product will not be financially successful because of its price and because of strong competing products from huge, well-known competitors. Moreover, it is a prediction of a perception of investors. It does not in any way identify the "claims" to which the product fails to measure up, certainly not just the scientific "claims" Plaintiff assumes were intended.

 The basis for the claim in regard to the second purportedly libelous passage, which states "the company's been developing [Sugaree] 15 years . . . ," is that the product actually had been in development for only nine years and that the placement of quotation marks around the word "developing" implies dishonesty on the part of Biospherics. (Paper No. 8, p. 11–12). However, as Defendants point out, a statement is not considered false unless it " 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' " *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517, 111 S.Ct. 2419, 2433, 115 L.Ed.2d 447 (1991) (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)). In regard to this case, the amount of time which Biospherics has had Sugaree in development is not even pertinent, much less central, to the theme of the article and a statement that the product was in development for nine years would have no "different effect on the mind of the reader" than the alleged inaccuracy in the context of the article. The use of quotation marks around the word "developing" simply do not imply, as Biospherics argues, that the company "is not being totally candid" about its development of Sugaree. The implication, if any, in an investment context might be that the development—from patent to still-unobtained FDA approval—has been slow.

Finally, Biospherics complains of the statement: "Biospherics shares are easy to borrow; the few independent analysts who follow the company think its stock is worth $2 on current business." This statement is particularly difficult to label as verifiable because the term "easy" and the concept of "worth" are imprecise, at best. However, even if this statement is assumed to meet the first prong of verification, it must be considered protected in the context of an article advising market players to sell the stock "short," which is not even an investment in conventional terms but rather a rank gamble that the price of a stock will go down.

The context of the language in the article, the context of the article on the page, and the social context of this type of article make it clear that any reasonable reader would see this article for what it is—a stock tip which is purely the opinion of the tipster. Furthermore, this article, and the statements therein, not only clearly are opinion but also do not imply the existence of any fact. There is no actionable claim here.