Shirin ABADIAN

v.

Bobby LEE, et al.

Civil Action No. DKC 2000–716.

United States District Court,
D. Maryland.

Aug. 10, 2000.

M. Michael Cramer, Benjamin A. Klopman, Cramer & Klopman, Chartered, Rockville, MD, for Shirin Abadian, plaintiff.

Oliver Garcia, Williams & Connolly, Washington, DC, Robert S. Chapman, Law Office, Los Angeles, CA, for Bobby Lee, Jerry Kindela, Weider Publications, Inc., Weider Health and Fitness, defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Pending before the court in this defamation action is a motion to dismiss by Defendants Bobby Lee, Jerry Kindela, Weider Publications, Inc., and Weider Health & Fitness. The issues have been fully briefed. No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6. For the reasons set forth below, the court shall GRANT Defendants' Motion to Dismiss.

### I. Background

Plaintiff Shirin Abadian met Defendant Bobby Lee ("Lee") at Bally's Total Fitness ("Bally's") in McLean, Virginia, where Plaintiff then was employed and Lee was a member, in 1993. Plaintiff was and still is a resident of Virginia. Plaintiff and Lee became friends, and they kept in touch after Lee moved to California in 1998, where he became the fitness editor of *Men's Fitness* magazine.[1]

In October 1998, when Plaintiff was general manager of the McLean Bally's, Plaintiff and Lee had a telephone conversation. During the conversation, Lee asked Plaintiff about the membership fee policies and practices of health clubs in general. Plaintiff replied that many health clubs negotiate their membership fees with prospective applicants. Plaintiff also mentioned, however, that Bally's did not negotiate membership fees as a matter of strict policy.

In December 1998, Bally's transferred Plaintiff, in her capacity as general manager, from the McLean Bally's, where she worked for five years, to the Rockville, Maryland Bally's.

The March 1999 issue of *Men's Fitness* contained an article to which Lee contributed, entitled "39 Things You Should Never Do." Lee quoted parts of his October 1998 conversation with Plaintiff in composing the following piece of advice:

> Never sign up for a gym membership on the first visit. There's always a better price, says Shirin Abadian, general manager of Bally's Total Fitness in McLean, Virginia. "Deal to get the price where you want it, then leave," Abadian says. "You should receive a call within a week offering a better price than the one you originally wanted—especially toward the end of the month, when clubs need to meet their monthly numbers."

Plaintiff first noticed this published quotation when a manager from another Bally's location transmitted a copy of the article to her.[2]

Soon after the issue's publication, Bally's upper management noticed the article and suspended Plaintiff from her position on February 25, 1999. Before the end of the month, Bally's discharged Plaintiff specifi-

---

1. Weider Publications, Inc. publishes *Men's Fitness*, a nationally circulated health and fitness magazine. Weider Publications, Inc. is a Delaware corporation with its principal place of business in California. Weider Health & Fitness holds 98.67% of the outstanding shares of Weider Publications, Inc. and is a Nevada corporation with its principal place of business in California.

2. Plaintiff did not mention whether she received the facsimile transmission at the Rockville Bally's or at her Virginia residence.

cally for the quotation attributed to her in the March 1999 issue of *Men's Fitness*.

On January 28, 2000, Plaintiff filed a five-count complaint in the Circuit Court for Montgomery County, Maryland, against Defendants based on the published quotation and the harm that resulted. Count I alleges defamation, and counts II through V claim false light invasion of privacy, injurious falsehood, negligence, and interference with employment, respectively. Plaintiff demands $1,000,000 in compensatory damages and $1,000,000 in punitive damages. On March 13, 2000, Defendants, pursuant to 28 U.S.C. § 1441, removed this action to this Court, which has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## II. *Standard of Review*

■ A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable interferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint. The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir.1998) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46–48 (2d Cir.1991)).

## III. *Discussion*

### A. Choice of Law

■ A federal court sitting in diversity jurisdiction must apply the choice of law rules from the forum state in examining substantive issues of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This procedure, in turn, applies in ruling on motions to dismiss. *Klaxon*, 313 U.S. at 496, 61 S.Ct. 1020. Where the substantive area of the chosen state's law is unclear, the court sitting in diversity is obliged to interpret the law as it believes that state's highest court of appeals would rule. *Liberty Mut. Ins. Co. v. Triangle Industries, Inc.*, 957 F.2d 1153, 1156 (4th Cir.1992).

■ For tort claims, Maryland generally adheres to the *lex loci delicti commissi*, or place of harm, principle to determine the applicable state's substantive law. *Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712, 716 (1997). In defamation suits, the place of harm traditionally has been the location where the defamatory statement was published, i.e. seen or heard by non-parties. *Wells v. Liddy*, 186 F.3d 505, 521–22 (4th Cir.1999); *Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir.1992). But where communication is published simultaneously in multiple states, application of Maryland's traditional place of harm rule "becomes cumbersome, if not completely impractical." *Liddy*, 186 F.3d at 527.

■ Because the *lex loci delicti* rule fails to reach a satisfactory result on multistate defamation issues, courts in this Circuit have ruled that the Court of Appeals of Maryland would adopt the rule stated in the Restatement (Second) of Conflict of Laws. *Id.* at 528; *Biospherics, Inc.*, 989 F.Supp. at 750; *Fornshill v. Ruddy*, 891 F.Supp. 1062, 1069 (D.Md.1995); *Crowley v. Fox Broadcasting Co.*, 851 F.Supp. 700, 702 (D.Md.1994). The Second Restatement, in pertinent part, provides:

(1) The rights and liabilities that arise from defamatory matter in any ... broadcast over radio or television ... or newspaper ... or similar aggregate communication are determined by the local law of the state which ... has the

most significant relationship to the occurrence and the parties [.]

(2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

Restatement (Second) of Conflict of Laws § 150 (1971 & Supp.1995). Courts employ the Second Restatement rule on a "case-by-case balancing test," *Reeves v. American Broadcasting Companies, Inc.*, 719 F.2d 602, 605 (2d Cir.1983), and consider the state of plaintiff's domicile, the state of plaintiff's principal activity to which the alleged defamation relates, and the state where plaintiff suffered the greatest amount of harm, as significant factors in deciding the applicable law. *Jewell v. NYP Holdings*, 23 F.Supp.2d 348, 360 (S.D.N.Y.1998). Courts generally have determined that the plaintiff's state of residence bears the most significant relationship to the incident and parties because that is where the plaintiff's reputation suffers the most. *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir.1985); *Reeves*, 719 F.2d at 605; *see AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992) (applied Second Restatement rule because *lex loci* state has "little interest in controlling the remedies available to non-domiciliaries injured by ... tortious conduct"); *see Ruffin–Steinback v. dePasse*, 82 F.Supp.2d 723, 734 (E.D.Mich.2000) (applied law of state of plaintiff's domicile even though neighboring state maintained interest in plaintiff's injury); *see Fitzpatrick v. Milky Way Productions Inc.*, 537 F.Supp. 165, 171 (E.D.Pa.1982) ("[S]tate of plaintiff's domicile has a policy interest in protecting the individual reputations of its citizens.").

Plaintiff argues that Maryland law governs this action. In W*ells v. Liddy*, the plaintiff, a resident of Louisiana, filed a defamation action against a defendant who made allegedly defamatory statements on a nationally syndicated radio show. *Liddy*, 186 F.3d at 528. Following the Second Restatement, the court ruled that Louisiana law governed because the show was broadcast in the plaintiff's state of residence. *Id.* In this case, Plaintiff argues that Maryland law should apply because she was fired in Maryland.[3] However, *Men's Fitness*, like the radio show in *Liddy*, maintains a national audience, with readers in Maryland and Virginia. And while Plaintiff's relationship with clients and management deteriorated, ultimately forcing her to work outside of her field, these injuries bear stronger relation to Virginia. Plaintiff was employed by the Virginia Bally's for approximately six years, while she worked only three months at the Maryland location. It would logically follow that Plaintiff had not only more clients in Virginia, but also stronger and more numerous ties to the fitness industry there. Plaintiff resided in Virginia and likely suffered the most damage to her reputation in Virginia. Therefore, Virginia law applies.

**B. Defamation**

 In Virginia, the requisite elements for the tort of defamation are: (1) publication "of and concerning" the plaintiff, (2) an actionable statement, and (3) the requisite intent. *Chapin v. Greve*, 787 F.Supp. 557, 562 (E.D.Va.1992); *Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713, 725 (1985). A defamatory statement may be made by direct reference or by implication. *Carwile v. Richmond Newspapers*, 196 Va. 1, 82 S.E.2d 588, 592 (1954). The latter occurs when a publication states facts that are literally true, but produces a defamatory meaning reasonably apparent from a plain reading of the publication in its entirety. *Chapin v. Knight–Ridder*,

---

**3.** This factor may be treated as the state of plaintiff's principal activity to which the alleged defamation relates, as the Southern District of New York outlined in *Jewell*, 23 F.Supp.2d at 360.

*Inc.,* 993 F.2d 1087, 1092–93 (4th Cir.1993). Libel-by-omission produces the same defamatory result, only differing in that an omission of a fact produces that inference. A libel-by-implication, or by-omission, plaintiff, however, must make an "especially rigorous showing." *Id.* To qualify as an actionable statement, "the language must ... be reasonably read to impart the false innuendo." *Id.* Furthermore, to demonstrate the requisite level of intent, the language must "affirmatively suggest that the author intends or endorses the inference." *Id.*

■ Plaintiff argues that Defendants' statements, combined with the omission of her company's policy, were impliedly defamatory. The court may determine whether the challenged statement is reasonably capable of defaming the plaintiff as a matter of law. *Greve,* 787 F.Supp. at 561; *Wilder v. Johnson Pub. Co.,* 551 F.Supp. 622, 623 (E.D.Va.1982). Defendants' statement was "of and concerning" Plaintiff because Lee attributed her name to the quotation. The issues, however, are (1) whether the statements Defendants published are actionable, and (2) whether Defendants acted with the requisite intent in publishing the statement.

■ Plaintiff first argues that the statement is actionable because a reader reasonably may assume from Defendants' article that Plaintiff was either incompetent for misstating her employer's policy or dishonest for falsely telling past customers that she was not allowed to negotiate membership fees. An actionable statement must be both substantially false and defamatory. *Knight–Ridder, Inc.,* 993 F.2d at 1092. "[A]lleged defamatory words are to be taken in their plain and natural meaning." *Carwile v. Richmond Newspapers,* 196 Va. 1, 82 S.E.2d 588, 592 (1954). The interpretation of the language "cannot, by innuendo, be extended beyond its ordinary and common acceptation," nor can the innuendo "extend meaning of words used, or make that certain which is

in fact uncertain." *Id.* Libel-by-implication includes statements which damage one's professional standing. *Id.* at 592. However, a defamatory inference must make the plaintiff appear "odious, infamous or ridiculous." *Id.* Examples of defamatory inferences include statements that damage a plaintiff's reputation, either by implying that a lawyer was charged with a nonexistent ethics violation, *id.,* or by falsely insinuating that a man was a criminal suspect in a disappearance, *Schiavone Const. Co. v. Time, Inc.,* 847 F.2d 1069, 1072 (3d Cir.1988). However, an article questioning a businessman's financial ability by stating that his previous venture lost money, although omitting that he could have covered the loss with other assets, was not reasonably capable of defamatory meaning. *Knight–Ridder, Inc.,* 993 F.2d at 1094. A television report that showed a national guardsman being rescued, but not his initial attempt at rescuing a victim, also was not defamatory because the report reasonably did not imply that the guardsman was professionally incompetent. *Crowley,* 851 F.Supp. at 701–03. Finally, a statement that a lawyer's client performed extensive legal research on his own case could not make the lawyer appear ridiculous enough to qualify as defamatory. *Coles v. Washington Free Weekly,* 881 F.Supp. 26, 33 (D.D.C.1995), *aff'd,* 88 F.3d 1278 (D.C.Cir.1996). Truth, nevertheless, is an absolute defense. *Greve,* 787 F.Supp. at 563. In this case, Plaintiff claims that Defendants' omission of her employer's negotiation policy portrays Plaintiff as incompetent or untrustworthy, thus damaging her professional standing. Plaintiff, however, admits that she gave the quoted remarks to Lee. Any negative implication that a reader may draw from these admittedly true statements is uncertain at best. But even provided that the negative implication is apparent in the statement's plain and natural meaning, the false assumption that Bally's negotiates membership fees is neither odious, infa-

mous, nor ridiculous.[4] It hardly rises to the level of insinuating that a lawyer is unethical or that an uncharged man is a suspected criminal. Therefore, as a matter of law, the statement is not actionable.[5]

■■■ Even if Plaintiff had alleged actionable defamation, she has failed to show the necessary intent. She argues that Defendants' statements and omission, taken together, affirmatively suggest that the author intended or endorsed a defamatory inference. Under Virginia law, the defamatory meaning "must flow readily from the statements and the [implied defamatory meaning]." *Wilder v. Johnson Publishing Co.*, 551 F.Supp. 622, 624–25 (E.D.Va.1982). That an accusation merely "tend[s] to ... diminish the esteem ... in which the plaintiff is held" is insufficient to satisfy the intent requirement. *Id.* at 624. In *Wilder v. Johnson Publishing Co.*, defendant's newspaper stated that plaintiff, "who had run second to the [former] mayor in prominence," "abandoned" the mayor in giving the deciding vote to the mayor's opponent. *Id.* at 624–25. While plaintiff argued that the newspaper implied that plaintiff abandoned "his longtime friend[ ] 'for reasons of jealousy,' " the defamatory meaning did not "readily flow from the statements." *Id.* at 625. The court held that, even if plaintiff was in fact jealous of the mayor, nothing in the article affirmatively suggested that this motivated his political decision. *Id.* Other courts similarly have held that a defendant's statements must include affirmative evidence supporting the defamatory inference. *See White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C.Cir.1990) (plaintiff must establish that defendant "*intends* or *endorses* the defamatory inference"[;] ... however, "if a communication ... merely conveys materi-

ally true facts from which a defamatory inference can be reasonably drawn, [then] libel is not established" (emphasis in original)); *Southern Air Transport, Inc. v. American Broadcasting Cos.*, 877 F.2d 1010, 1015–16 (D.C.Cir.1989) (while a viewer might infer the alleged defamatory meaning with little difficulty, nothing in defendant's specific treatment of plaintiff indicated it was reasonable to do so); *see also Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648–49 (8th Cir.1985) (publication of plaintiff's arrest for alleged rape not capable of being defamatory even though report omitted that plaintiff passed lie detector test, that medical exam demonstrated no signs of rape, and that numerous federal authorities called allegation unfounded).

■■ Courts also disfavor libel-by-omission claims both because affirmative evidence of intent is harder to cite and because "editorial decisions [to omit material] are best left to editors." *Newton v. National Broadcasting Co., Inc.*, 930 F.2d 662, 686 (9th Cir.1991) (dismissed suit complaining that defendant did not include both plaintiff's entire response to question and provocation from defendant that led to plaintiff's angry response); *see Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 412 (6th Cir.1991) ("Appellees have no legal obligation to present a balanced view of what led up to [the publicized event]."). In this case, Defendants published materially true facts but chose not to include one of Plaintiff's statements. Plaintiff alleges only that Defendants published the article with negligent and reckless disregard for the truth. However, Lee wrote nothing to suggest, let alone intend or endorse, the alleged defamatory meaning. At most, the article

---

4. Both parties admit that negotiating membership fees is a common and accepted practice in the fitness industry.

5. Even assuming, *arguendo*, that Maryland law applies, the statement still would not be actionable. Maryland demands an equally rigorous showing for attributing a defamatory inference to a statement. "A defamatory

statement is one which tends to expose a person to public scorn, hatred, contempt, or ridicule[.]" *Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191, 1210 (1992). Just as the statement cannot make Plaintiff appear "odious, infamous or ridiculous" under Virginia law, it also cannot expose her to "public scorn, hatred, contempt or ridicule."

could be read to impart the implied meaning. A reading, without more, simply does not rise to the necessary level of intent to sustain this claim. Therefore, the defamation claim must fail.

### C. Accompanying Claims

 Plaintiff also claims (1) false light invasion of privacy, (2) injurious falsehood, (3) negligence, and (4) interference with employment. None, however, can survive. First, Virginia does not recognize the common law action of false light invasion of privacy. *Falwell v. Penthouse Int'l, Ltd.*, 521 F.Supp. 1204, 1206 (W.D.Va.1981).[6] Second, the tort of injurious falsehood is designed to redress injury regarding property, such as slander of title or product disparagement, not personal reputation. *Warren v. Bank of Marion*, 618 F.Supp. 317, 320 (W.D.Va.1985); *General Products Co., Inc. v. Meredith Corp.*, 526 F.Supp. 546, 553 (E.D.Va.1981).[7] Third, negligence is only one of three requisite elements for stating a defamation claim in Virginia. *Gazette, Inc.*, 325 S.E.2d at 725. Moreover, a plaintiff cannot prevail on a negligence claim after she loses a defamation claim based on the same pleadings. *Texas Beef Group v. Winfrey*, 11 F.Supp.2d 858, 864 (N.D.Tex. 1998); *O'Brien v. Alexander*, 898 F.Supp. 162, 173 (S.D.N.Y.1995).[8] Fourth, and finally, the tort of interference with employment requires that the defendant intentionally must interfere with the plaintiff's contract or employment. *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97, 102 (1985). This court previously found that no evidence existed to show that Defendants in-

tended or endorsed the alleged defamatory meaning. Because the intent element fails, the entire claim must fail as well.[9]

### IV. *Conclusion*

Accordingly, Defendants' motion to dismiss will be GRANTED in its entirety.

---

**6.** The claim also would fail under Maryland law because a false light invasion of privacy claim "may not stand unless [it] also meets the standards for defamation." *Crowley*, 851 F.Supp. at 704.

**7.** Maryland law also limits injurious falsehood claims to property interests. *See Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F.Supp. 1263, 1276 (D.Md.1992).

**8.** The same holds true under Maryland law. *Jacron Sales Co., Inc. v. Sindorf*, 276 Md. 580, 350 A.2d 688, 697–98 (1976).

**9.** Applying Maryland law, the claim also fails. In Maryland, a claim of tortious interference with employment requires that an act be intentional and calculated to cause damage to Plaintiff in his lawful business. *Cambridge Title Co.*, 817 F.Supp. at 1276. This element is not satisfied under both Maryland and Virginia law.